FILED

2016 Nov-04  PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **DEBORAH A. ROBERTS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  6:15-CV-238-MHH** |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **Commissioner of the** | } | |
| **Social Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Deborah A. Roberts seeks judicial review of a final adverse decision of the Commissioner of Social Security.  The Commissioner denied Ms. Roberts's claims for disability insurance benefits, widow's insurance benefits, and supplemental security income.  After careful review, the Court affirms the Commissioner's decision.

## I.   PROCEDURAL HISTORY

Ms. Roberts applied for disability insurance benefits, widow's insurance benefits, and supplemental security income on July 21, 2008.  (Doc. 7-5, p. 6; Doc.

7-7, pp. 2, 7).[1]  Ms. Roberts alleges that her disability began on February 18, 2006. (Doc. 7-7, pp. 2, 7).   The Commissioner initially denied Ms. Roberts's claims. (Doc. 7-5, pp. 2-7).  Ms. Roberts then requested a hearing before an Administrative Law Judge (i.e., an ALJ).  (Doc. 7-6, pp. 4-5).   The ALJ issued an unfavorable decision on November 19, 2010.  (Doc. 7-5, pp. 11-21).  Ms. Roberts asked the Appeals Council to review the ALJ's decision.  (Doc. 7-6, p. 67).  On December 4, 2012, the Appeals Council completed its review and remanded the matter to the ALJ.  (Doc. 7-5, pp. 28-30).  The Appeals Council instructed the ALJ to:

- Further evaluate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a(c).

- Further evaluate the claimant's ability to perform past relevant work.   In so doing, further evaluate whether the work was substantial gainful activity.

- Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14), and to determine whether the claimant has acquired any skills that are transferable (with very little, if any, vocational adjustment as appropriate) to other occupations under guidelines in Social Security Ruling 82-41.  The hypothetical   questions   should   reflect   the   specific capacity/limitations established by the record as a whole.  The

---

[1] Ms. Roberts previously filed applications for disability insurance benefits and supplemental security income on October 31, 2003 and November 21, 2006.  (Doc. 7-3, p. 11).  The ALJ did not reopen or revise the administrative decisions with respect to these applications, and Ms. Roberts does not challenge those decisions.  (Doc. 7-3, p. 11; Doc. 11, pp. 1-3).

> Administrative Law Judge will ask the vocational expert to
> identify examples of appropriate jobs and to state the incidence of
> such jobs in the national economy (20 CFR 404.1566 and
> 416.966). Further, before relying on the vocational expert
> evidence the Administrative Law Judge will identify and resolve
> any conflicts between the occupational evidence provided by the
> vocational expert and information in the Dictionary of
> Occupational Titles (DOT) and its companion publication, the
> Selected Characteristics of Occupations (Social Security Ruling
> 00-4p).

(Doc. 7-5, pp. 29-30).

The ALJ conducted a new hearing and issued a new decision on July 18, 2013, once again finding that Ms. Roberts was not disabled. (Doc. 7-3, pp. 10-25). Ms. Roberts asked the Appeals Council to review the ALJ's new opinion. (Doc. 7-3, p. 6). On December 19, 2014, the Council declined her request (Doc. 7-3, pp. 2-4), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. §§ 405(g) and 1383(c).

## II.   STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings. "Substantial evidence is more than a

scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If the ALJ's factual findings are supported by substantial evidence, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.   SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or

combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Roberts has not engaged in substantial gainful activity since February 18, 2006, the alleged onset date. (Doc. 7-3, p. 13). The ALJ determined that Ms. Roberts suffers from the following severe impairments: post laminectomy syndrome and lumbago. (Doc. 7-3, p. 14). The ALJ determined that Ms. Roberts's hypertension is a non-severe impairment. (Doc. 7-3, p. 14). Based on a review of the medical evidence, the ALJ concluded that Ms. Roberts does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 7-3, pp. 14-16).

Next, the ALJ evaluated Ms. Roberts's residual functional capacity in light of her impairments. The ALJ determined that Ms. Roberts has the RFC to perform:

light work as defined in 20 CFR 404.1567(b) and 416.967(b), with occasional lifting and/or carrying up to 20 pounds and frequent lifting and/or carrying up to 10 pounds. She can stand and/or walk for six hours in an eight-hour workday and sit for a total of six hours in an eight-hour workday. She can occasionally balance, stoop, crouch, and

5

crawl and can occasionally climb ramps and stairs.   Work activity
should not include work on ladders, ropes, or scaffolds and she should
not work at unprotected heights or work around dangerous moving
machinery.   She should avoid concentrated exposure to areas of
extreme cold.

(Doc. 7-3, p. 16).

Based on this RFC and on opinion testimony that a vocational expert
provided during Mr. Roberts's administrative hearing, the ALJ concluded that Ms.
Roberts is able to perform her past relevant work as a mobile home electrician.
(Doc. 7-3, p. 24).   Accordingly, the ALJ determined that Ms. Roberts is not
disabled within the meaning of the Social Security Act.   (Doc. 7-3, pp. 24-25).

## IV.   ANALYSIS

Ms. Roberts argues that she is entitled to relief from the ALJ's decision
because: (1) the ALJ failed to acknowledge the vocational expert's (i.e., VE's)
testimony that Ms. Roberts cannot perform work as an electrical motor repairer; (2)
the ALJ ignored Ms. Roberts's history of back surgeries and back pain; (3) the ALJ
erred by not following Rule 202.06 of the Medical-Vocational Guidelines; and (4)
the ALJ erred by not accounting for the vocational expert's testimony that if Ms.
Roberts misses more than one day of work per month, she would not be qualified
to perform any jobs.   The Court examines each issue in turn.

## A.    Past Relevant Work.

Ms. Roberts argues that the administrative record does not contain substantial evidence to support the ALJ's finding that she could perform her past relevant work as a mobile home electrician because the ALJ did not credit the vocational expert's testimony that she could not perform work as an electrical motor repairer. (Doc. 11, p. 13).  This argument is not persuasive because the ALJ did not base his decision on a finding that Ms. Roberts could perform work as an electrical motor repairer. (Doc. 7-3, p. 24).  Rather, the ALJ concluded that Ms. Roberts was not disabled because she could perform her past work as a mobile home electrician. (Doc. 7-3, p. 24).[2]

The ALJ's passing reference to Ms. Roberts's past work in electronic motor repair is not reversible error.  In response to questions from the ALJ, the vocational expert testified that Ms. Roberts could perform work as a mobile home electrician and as an electrical motor repairer. (Doc. 7-4, pp. 26-27).  In response to questions from Ms. Roberts's attorney that included specific limitations, the vocational expert testified that Ms. Roberts could not work as an electrical motor repairer. (Doc. 7-4, pp. 34-36).  In his decision, after finding that Ms. Roberts could perform her past work as a mobile home electrician, the ALJ mentioned that the vocational

---

[2] Ms. Roberts was 59 years old when her husband died on October 10, 2004. (Doc. 7-4, p. 5). To be entitled to disabled widow's benefits, Ms. Roberts must demonstrate that her "disability started not later than 7 years after" her husband died.  20 C.F.R. § 404.336(c)(1).  Because the ALJ found that Ms. Roberts was not disabled "at any time through the date of [the ALJ's] decision," Ms. Roberts does not qualify for disabled widow's benefits. *Id.*

expert "gave additional jobs within the claimant's residual functional capacity and [those jobs] include that of an electrical motor repairer. . . ." (Doc. 7-3, p. 24). To the extent that this statement qualifies as a finding that Ms. Roberts can perform work as an electrical motor repairer, the ALJ's reference to this portion of the vocational expert's testimony is harmless error.[3]

### B.     The ALJ did not ignore Ms. Roberts's history of back problems.

Ms. Roberts argues that the ALJ's finding that she can perform her past work as a mobile home electrician is not supported by substantial evidence because the ALJ failed to properly account for her history of back problems.   The ALJ acknowledged that Ms. Roberts's medical records show that she "has a long history of back problems with a history of three back surgeries reported." (Doc. 7-3, p. 18; Doc. 7-4, p. 12).  The first two surgeries occurred in 1994 and 1995.  Ms. Robert's initially had surgery to treat a herniated disc.  (Doc. 7-3, p. 18; Doc. 7-4, p. 13; Doc. 7-13, p. 25).   In 2003, Ms. Roberts had a lumbar fusion at L5-S1. (Doc. 7-4, p. 13; Doc. 7-13, p. 25; Doc. 7-14, p. 44).

Medical records do not substantiate Ms. Roberts's allegations that her back pain is disabling.  In May 2003, Dr. Cem Cezayirili of Baptist Medical Center

---

[3] After the ALJ determined that Ms. Roberts can perform her past relevant work, the ALJ's analysis was complete; he did not have to identify other jobs that Mr. Roberts could perform. Therefore, his reference to electrical motor repairer is superfluous. *See* 20 C.F.R. § 404.1520(f) (a claimant must be found not disabled if she can perform past relevant work).  Accordingly, the ALJ's comment about electric motor repair is not reversible error.

noted that with the exception of screws at L5 and S1, "[t]he vertebral body segments [in Ms. Roberts's back] are all unremarkable. . . ." (Doc. 7-14, p. 44). A July 2003 x-ray revealed that "[d]isc spaces are symmetrical. No acute fractures of sublexations are seen and there is no evidence of bony destruction. Facets in the lower lumbar region showed some narrowing but no significant sclerosis. Paraspinal soft tissues are normal." (Doc. 7-14, p. 37). December 2003 x-rays showed that Ms. Roberts's fusion was stable with "no significant malalignment." (Doc. 7-14, p. 36).

Dr. Jeffery Long and Dr. Muhammad Ali treated Ms. Roberts's back pain in 2005 and 2006. Dr. Long's treatment notes contain few examination findings. Dr. Long treated Ms. Roberts's back pain with Lortab. (Doc. 7-9, pp. 3-6). In January 2006, Ms. Roberts saw Dr. Ali and complained of "severe and throbbing" back pain that radiated to her legs. Ms. Roberts also reported that she was experiencing numbness in her right and left leg. (Doc. 7-9, p. 8). Dr. Ali's records state that Ms. Roberts's low back pain improved with narcotics. (Doc. 7-9, p. 8). An extremity exam revealed "no cyanosis, clubbing, or edema." (Doc. 7-9, p. 9). Dr. Ali also noted that Ms. Roberts had full muscle strength and "normal muscle tone without any atrophy or abnormal movements." (Doc. 7-9, p. 9).

In January 2006, Ms. Roberts went to the emergency room after she fell. (Doc. 7-11, p. 55). Dr. Scott Grumley noted Ms. Roberts's lumbar fusion surgery

at L5-S1.  (Doc. 7-11, p. 57).  X-rays demonstrated "no fracture, hardware failure, or loosening."  (Doc. 7-11, p. 57).  In February 2006, the month after her fall, Dr. Ali described Ms. Roberts's range of motion as "[d]ecreased ROM in cervical and lumbar. . . . [P]ainful with all motion except left/right rotation and extension of cervical spine."  (Doc. 7-9, p. 18).  But even after the fall, Ms. Roberts's exacerbated back pain was "better with narcotics."  (Doc. 7-9, p. 18).  Dr. Ali's assessment was that the pain Ms. Roberts was experiencing then was a "flare up of old condition."  (Doc. 7-9, p. 18).

In September 2008, Dr. Samia Moizuddin performed a consultative examination.  (Doc. 7-13, pp. 25-27).  Dr. Moizuddin reviewed Ms. Roberts's history of back surgeries.  (Doc. 7-13, p. 25).  Ms. Roberts described her back pain as "sharp, stabbing to constant aching pains," and she stated that the pain shoots down her legs and that she "has numbness and tingling if she stands or sits for too long."  (Doc. 7-13, p. 25).  Dr. Moizuddin noted that Ms. Roberts's "[g]ait and station examination reveals midposition without abnormalities.  Patient can do heel walk.  Patient is able to squat all of the way.  Patient can do toe walk."  (Doc. 7-13, p. 26).  Ms. Roberts's cervical range of motion was "within normal limits."  (Doc. 7-13, p. 26).  Her lumbar range of motion showed "25 degrees flexion, 15 degrees extension, 50 degrees L Rotation, 50 Degrees R Rotation."  (Doc. 7-13, p. 26).  Dr. Moizuddin diagnosed hypertension, tobacco use, back pain, lumbalgia, and knee

arthritis.  Dr. Moizuddin did not report limitations on Mr. Roberts's ability to work

because of these impairments.  (Doc. 7-13, p. 27).

In September 2010, Ms. Roberts went to the emergency room complaining

of a "hurt hip."  (Doc. 7-14, p. 65).  Dr. Wilton Holman found "no acute fracture or

dislocation . . . soft tissues . . . unremarkable" and, in general, "no acute process."

(Doc. 7-14, p. 68).

The ALJ properly considered Ms. Roberts's history of back problems (Doc.

7-3, p. 18), and substantial evidence supports the ALJ's conclusion that Ms.

Roberts's treatment records are inconsistent with her allegations of disabling back

pain.[4]  *See e.g.*, *Eckert v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 784, 791 (11th Cir.

2005) ("[T]he credible medical evidence, as found by the ALJ, did not confirm the

_____

[4] The ALJ also found that Ms. Roberts' reports of disabling back pain are inconsistent with her activities of daily living.  (Doc. 7-3, pp. 17-18).  In an Adult Function Report that she completed in July 2008, Ms. Roberts stated that she was able to prepare simple meals, wash dishes, sweep floors, dust, clean the bathroom, and do laundry.  (Doc. 7-8, p. 46).  Ms. Roberts reported that she walked outside every day and that when she goes out, she is able to walk or drive alone. (Doc. 7-8, p. 47).  Ms. Roberts stated that she shopped weekly for two to three hours at a time for groceries and other household items.  (Doc. 7-8, p. 47).

During a consultative psychological evaluation of Ms. Roberts in September 2008, Dr. Jerry Gragg noted that Ms. Roberts "lives alone" and "spends her time during the day taking care of her mother, reading, or visiting her sister."  (Doc. 7-13, p. 31).  Ms. Roberts told Dr. Gragg that she can cook and clean, although her physical constraints limited her ability to clean.  Ms. Roberts reported that she did her own laundry and drove a car, even though she did not have a valid driver's license.  Dr. Gragg stated that Ms. Roberts "does not require any assistance with personal [] hygiene/self-care activities."  (Doc. 7-13, p. 31).

During a consultative psychological evaluation of Ms. Roberts in September 2010, Dr. Alan Blotcky reported that "Ms. Roberts spends most of her time doing light housework, cooking, watching television, and sleeping.  Her driver's license is suspended.  Ms. Roberts visits with her mother, sister, son, and a neighbor during the week."  (Doc. 7-14, p. 72).

severity of the alleged pain and the objectively determined medical condition was not of such a severity that it can reasonably be expected to give rise to the alleged pain.").

**C.      The ALJ did not err by not following Grid Rule 202.06 because the grids do not apply until step five of the sequential evaluation process.**

Ms. Roberts's argument that the ALJ erred by not following Rule 202.06 of the Medical-Vocational Guidelines is not persuasive.  The grids do not apply until step five of the sequential evaluation process.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, §200.00(a) ("The following rules reflect the major functional and vocational patterns which are encountered in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work.").  Here, the ALJ found at step four of the sequential evaluation process that Ms. Roberts is able to perform her past work as a mobile home electrician.  (Doc. 7-3, p. 24).  Accordingly, the ALJ did not err in failing to proceed to step five and apply Grid Rule 202.06.  *See Delmonte v. Comm'r of Soc. Sec. Admin.*, 585 Fed. Appx. 774, 776 (11th Cir. 2014) ("[The medical vocational] guidelines apply only if the administrative law judge

determines that a claimant is incapable of performing his past relevant work at step four of the evaluation.").

> **D.  The ALJ did not err by not accounting for the VE's testimony about absenteeism because Ms. Roberts did not provide medical evidence indicating that she would regularly miss more than one day of work per month.**

A claimant bears the burden of proving that she cannot perform her past relevant work as it was previously performed or as the job is generally performed in the national economy. *Levie v. Comm'r of Soc. Sec.*, 514 Fed. Appx. 829, 830-31 (11th Cir. 2013) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991)).  To determine whether a claimant is able to perform her past relevant work, the ALJ uses the residual functional capacity assigned to a claimant to pose hypotheticals to a vocational expert about possible work that a claimant can complete. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).  For the testimony of a vocational expert "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  An ALJ is not required to "include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford*, 363 F.3d at 1161.

Ms. Roberts argues that the ALJ erred by failing to account for the vocational expert's testimony about absenteeism.  The vocational expert testified that if Ms. Roberts regularly had to miss more than one day of work per month, she

could not perform any jobs, including her past relevant work as a mobile home electrician.  (Doc. 7-4, p. 35).  The ALJ acknowledged the vocational expert's testimony on this point, but the ALJ determined that the medical evidence did not support this limitation.  (Doc. 7-3, p. 23).  Therefore, the ALJ was not required to incorporate this limitation into his RFC determination.  *See Wilson*, 284 F.3d at 1227.

Ms. Roberts does not cite medical evidence or opinions from a physician suggesting that she must regularly miss more than one day of work per month.  Ms. Roberts instead relies on her own testimony to support her assertion; however, the ALJ found that Ms. Roberts's testimony about her limitations is not supported by the record.  (Doc. 7-3, p. 23).  Ms. Roberts does not challenge the ALJ's credibility findings.  Therefore, because the ALJ rejected Ms. Roberts's allegation that she must regularly miss more than one day of work per month, the ALJ was not required to account for the vocational expert's testimony about the effect that this limitation would have on Ms. Roberts's ability to work.  *Crawford*, 363 F.3d at 1161.

## V.    CONCLUSION

For the reasons discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the

Commissioner.  Accordingly, the Court affirms the Commissioner.  The Court will enter a separate final judgment consistent with this memorandum opinion.

     **DONE** and **ORDERED** this November 4, 2016.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE